Chancellor Rutledge
delivered the Decree of the Court.
This is altogether a bill of discovery. There is no fraud charged on defendants. The allegations of the bill are intended to draw from defendants a discovery whether they are not associated in the company called the Yazoo Company j whether they did not apply to Mr. Moultrie to loan them a sum of money in indents, and *15 did not know at the time of obtaining them that they were the property of the state, and could not be lent to them by him as his private property ; but merely as the agent or trustee of the state, and that the bond they gave, was to , r . , . . , secure the re-payment ox them to the state. The defendant Penman in his answer explicitly denies that he was ever associated with that company; nor did he know that Moultrie had judgments in his hands, belonging to the state; nor did he apply to him to loan them. That no explanation was ever made by Moultrie, & defendant supposed they were his own, as he offered to loan them, and took the obligation in his own name, and to his own use. That had he known they belonged to the state, he would not have signed the bond. The proposed loan came from M. and so far from defendant’s seeking it, great pains were taken by Moultrie and other defendants, to get his name to the bond. That he never signed the association; and some short time after he returned from Europe, finding his name had been set down by Washington, alias Welch, he immediately applied to him to know by what authority he had done it, and insisted on its being erased.. He then assigns his reasons for signing the bond to Moultrie, and that it was on the express conditions declared at the time to the, obligee and the others, and acceded to by them, that the grant should be immediately obtained with the indents 1 so loaned, and that he signed on that condition only; and if the grant was not obtained, he would not be bound. That when they failed, he applied to Moultrie to be released agreeably to his stipulations, who refused to take his name from the bond, in as much as the others were still liable, but gave him a release, and also a certificate, declaring defendant was not, nor had he ever been associated with them in the company. Counsel for complainant, to prove Penman a member ofthe Yazoo Company, produced the bond above inferred to, which in the concluding part, declared that the obligation was given by them in behalf of themselves, and the rest of the members of the company. A list of judgments against Moultrie, the *16 obligee, and mortgages to a considerable amount,-were also produced; whence an inference was drawn, that penman could not but have known Moultrie’s embarrass-e¿ situation, and.that it was not in Moultrie’s power to „ . , , , . , . , , have furnished them with indents to so large an amount out of his own funds. And to prove by circumstantial evidence, that Penman was the person who principally induced the loan, a list of judgments was also produced against Huger and Snipes, two ofthe co-obligors. Opposed to this evidence, is the defendants answer,, pointedly denying his ever" being associated with the Company, corroborated by the deed of association, signed in 1789, when defendant was in England ; signed indeed'by Washington on his behalf, but without any authorityas Mr. J. Gair-diner, who was sworn, declared he was the only attorney of defendant, authorized to.act for him. Next, Washington’s letter to Penman, in March, 1Y90, requests to know if it was true that he had refused being a member; with Penman’s answer, declining- it. Then the certificate of the obligee in the bond, and director of the company, declaring' Penman was not, nor had he ever been a member ofthe company, together with the release, under hand and seal of the obligee, at a very early period after the bond was signed.
It was objected tothe release, that it was provisional; that, the other obligors should still be bound, or it was not to have effect. ^ ‘The release does not purport any thing- of the kind; it is absolute, - and the obligee must have known it would have the effect.to release them all. As to the idea that the release was to be kept secret, and the co-obligors made responsible, it was absurd, because, if the bond was ever put in suit, defendant Penman, must have been sued with the others; & his pleading the release, would be an effectual bar to a. recovery against them all. It was known at the time the bond was given up, and stated in the bill, that .the release existed. The state took the bond from the ohligee subject to that release, and would not allow it in Moultrie’s account, as a payment; but held it merely as a *17 collateral security, which plainly shews they did not consider it as a bond taken by him for their use. Nor indeed has it been attempted to be proved, that the indents loaned were the property of the state. There is a pro- . r . . , , vision m the bond, specifying that lor such indents to be paid, the obligee should be accountable to the company. There is no proof before the Court, that he ever accounted for them to the company. On the contrary, it was proved that he sold some of them, and gave ethers to one of the obligors, who dissipated them. If defendant received nothing, and the company for whose use they were loaned never received them from obligee, (and if they had, it is presumed that might have been .proved,) the bond was given without consideration, and the obligee might have fairly released it.
It is a maxim in this Court, that he who would have equity must do equity. It is hard that the state should suffer so great a loss by the improvident conduct of one of its confidential officers ; it would be still harder, that the defendant should make good that loss, when it is evident that he did not contribute to it, or even received a single farthing of the money ; and the obligee, who induced him to sign the bond, was so conscious of his innocence, that he gave him the release and certificate before mentioned. It were to be wished that the rules of evidence had permitted the obligee to be examined; it is very probable the defendants case would have appeared in a still more favorable light. But we can judge of it only from what appears to us. Upon the whole, the answer of defendant on oath, positively denying the allegations in the bill, supported by the variety of testimony above mentioned, cannot but make so strong an impression on the mind, as to leave no doubt, that he ought, in this Court to have the full benefit of the release pleaded, and therefore the bill should be dismissed.
Pringle for the complainant. Ford for the defendant,